**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CURTIS BROWN,**

                        **Plaintiff,**

            v.                                **5:01-CV-1523**
                                                    **(FJS/DEP)**

**CITY OF SYRACUSE,**

                        **Defendant.**

---

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OFFICE OF A.J. BOSMAN**<br>258 Genesee Street<br>Suite 301<br>Utica, New York 13502<br>Attorneys for Plaintiff | **A.J. BOSMAN, ESQ.** |
| **CITY OF SYRACUSE CORPORATION COUNSEL**<br>300 City Hall<br>Syracuse, New York 13202<br>Attorneys for Defendant | **DAVID H. WALSH, IV, ESQ.**<br>**TERRI BRIGHT, ESQ.** |

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Remaining in this action are Plaintiff's 42 U.S.C. § 1981, Title VII disparate treatment, and New York State Human Rights Law claims. Currently before the Court are Defendant's motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Plaintiff's cross-motion for additional time for discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The following facts are not in dispute.[1] The Syracuse Police Department ("SPD") appointed Plaintiff as a police officer in September 1996. On April 27, 2000, Plaintiff met a female, then 15 years old, at a restaurant and subsequently rented a hotel room for her. Later that day, Lieutenant Brennan of the SPD questioned Plaintiff about the female's whereabouts and whether he had rented a hotel room for her. Plaintiff stated that he had no knowledge of her whereabouts and that he had rented a hotel room for his cousin.

On April 28, 2000, Plaintiff picked up the same female at Carousel Mall and took her to school. Later that day, Captain Galvin of the SPD's Internal Affairs Division ("IA") asked Plaintiff whether he had had any contact with the female on April 27 or 28, 2000. He answered that he had not. That same day, the SPD placed Plaintiff on administrative suspension.

On June 20, 2000, Plaintiff pled guilty in Dewitt Town Court, County of Onondaga, State of New York, to one count of Endangering the Welfare of a Child, a class A misdemeanor. *See* N.Y. Penal Law § 260.10 (McKinney 2005). On July 5, 2000, the SPD suspended Plaintiff without pay pending termination.

On October 12, 2000, Plaintiff filed a verified complaint with the New York Division of Human Rights ("NYDHR") alleging racial discrimination against Defendant. On October 9, 2001, Plaintiff filed the instant action. On July 25, 2002, the Court dismissed all of Plaintiff's

---

[1] Although Plaintiff disputes the relevance or materiality of many of these facts, he does not dispute their factuality.

-2-

claims except for the ones mentioned above. *See* Dkt. No. 19 at 13-14. On August 9, 2002, the NYDHR dismissed Plaintiff's verified complaint on grounds of administrative convenience. *See* Dkt. No. 21 at 3.

## III. DISCUSSION

### A.   Plaintiff's cross-motion for additional time for discovery

Plaintiff has not identified any facts essential to his remaining claims that he cannot establish without further discovery. *See* Fed. R. Civ. P. 56(f). Accordingly, the Court denies Plaintiff's cross-motion for additional time for further discovery.

### B.   Defendant's motion for summary judgment

#### *1. Standard of review*

A court may grant summary judgment when the moving party carries its burden of showing the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). If the moving party has met its burden, the nonmoving party may not rely upon his pleadings but must come forward with specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

#### *2. Plaintiff's Title VII disparate treatment claim*

Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of disparate treatment on the basis of race. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04

(1973). If Plaintiff can make that showing, the burden of *production* shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for terminating Plaintiff. *Id.* at 802. If Defendant successfully articulates a legitimate nondiscriminatory reason, the burden of proof shifts back to Plaintiff to demonstrate that Defendant's reason for termination is mere pretext. *See id.* at 804.

To establish a *prima facie* case of disparate treatment under Title VII, Plaintiff must establish the following four elements by a preponderance of the evidence: (1) that he was a member of a protected class; (2) that he was qualified for the position that he held; (3) that Defendant took an adverse employment action against him; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Feingold v. N.Y.*, 366 F.3d 138, 152 (2d Cir. 2004) (citation omitted).

In the instant case, Plaintiff has clearly established the first three elements of a *prima facie* Title VII disparate treatment case. He is African-American. *See* Affidavit of Curtis Brown, sworn to March 13, 2005, at ¶ 4. Defendant hired him as a police officer. *See* Defendant's Statement of Material Facts at ¶ 1. On July 5, 2000, Defendant suspended Plaintiff without pay pending his termination. *See id.* at ¶ 24.

The question remains whether Defendant's termination of Plaintiff occurred under circumstances giving rise to an inference of discrimination. Plaintiff appears to try to establish this fourth element of his *prima facie* Title VII disparate treatment case by identifying four police officers whom Defendant disciplined less severely for similar or worse conduct. Indeed, "[a] showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized

method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted). "'[S]imilarly situated'" means "'similarly situated in all material respects.'" *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (quotation omitted). "What constitutes 'all material respects' . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40 (citation omitted).

Plaintiff identifies the first allegedly similarly-situated police officer as "Officer No. 28." A woman who was the victim of a crime to which Officer No. 28 responded filed a complaint against him with IA. *See* Dkt. No. 94 at Pt. 5 at 1-6. The essential nature of the complaint was that Officer No. 28 made sexual advances toward complainant, fondled her, and unnecessarily visited her residence subsequent to the crime to which he initially responded. *See id.* There is no indication that Officer No. 28 was criminally prosecuted, and the IA report contains no indication as to what criminal charge, if any, might have been appropriate. However, it appears that the facts stated might be sufficient to support a charge of Sexual Abuse in the Third Degree, a class B misdemeanor. *See* Deposition of Thomas C. Galvin, taken September 8, 2004, at 140:23; N.Y. Penal Law § 130.55. The report notes that there was no physical evidence to support the complainant's claims and no witnesses to the primary events other than she and Officer No. 28. *See* Dkt. No. 94 at Pt. 5 at 5-6. Nevertheless, Officer No. 28 did receive a Letter of Reprimand. *See id.* at 7. However, unlike Plaintiff, Officer No. 28 was neither charged nor convicted. Furthermore, the offense for which he might have been charged was a class B rather than a class A misdemeanor. Therefore, Officer No. 28 and Plaintiff are not similarly situated.

Plaintiff identifies the second allegedly similarly-situated police officer as "Officer No. 29." A woman who lived in the same apartment complex as Officer No. 29 filed a complaint against him with IA. *See* Dkt. No. 94 at Pt. 15 at 1-6. The essential nature of the complaint was that Officer No. 29 was unnecessarily observing complainant's and her roommate's activities, removing articles of their clothing from the laundry and returning the articles to them, knocking on their apartment door at inappropriate times, and, most seriously, walking around their apartment and standing outside its sliding door late at night. *See id.* An assistant district attorney informed IA that this evidence was probably sufficient to sustain a charge of Criminal Trespass. *See id.* at 6. It is not clear to what level of Criminal Trespass the assistant district attorney referred. However, the facts presented would only support a charge of Criminal Trespass in the Third Degree, a class B misdemeanor. *See* N.Y. Penal Law § 140.10 (McKinney 2005). Although it does not appear that Officer No. 29 was criminally prosecuted, Defendant suspended him without pay for two months and required him to submit to counseling. *See* Dkt. No. 94 at Pt. 15 at 15-17. However, unlike Plaintiff, Officer No. 29 was neither charged nor convicted. Furthermore, the offense for which he might have been charged was a class B rather than a class A misdemeanor. Therefore, Officer No. 29 and Plaintiff are not similarly situated.

Plaintiff identifies the third allegedly similarly-situated police officer as "Officer JR." Officer JR was charged by information with Public Lewdness in violation of New York Penal Law § 245.00. *See* Dkt. No. 94 at Pt. 16 at 26. "Public lewdness is a class B misdemeanor." N.Y. Penal Law § 245.00 (McKinney 2005). The information alleged that Officer JR stood nude in front of a window and stroked his penis with the intent that a woman observe him. *See* Dkt. No. 94 at Pt. 16 at 26. The Onondaga County District Attorney filed a negotiated disposition in

which he sought to adjourn the case in contemplation of dismissal and in which Officer JR agreed to a series of conditions of dismissal, including submission to a psychological evaluation and the issuance of a full order of protection. *See id.* at 4. However, unlike Plaintiff, Officer JR was not convicted. Furthermore, the offense for which he was charged was a class B rather than a class A misdemeanor. Therefore, Officer JR and Plaintiff are not similarly situated.

Plaintiff identifies the fourth allegedly similarly-situated police officer as "Officer No. 24." Officer No. 24 was involved in a vehicular-pedestrian accident and subsequently arrested for Driving While Intoxicated and charged with a violation of New York Vehicle and Traffic Law § 1192(3). *See* Dkt. No. 94 at Pt. 6 at 4, 5. He was fined $500 and required to participate in a program. *See id.* at 3. Since Officer No. 24 had not been previously convicted of Driving While Intoxicated, *see id.* at 4, his offense was a misdemeanor for which he could be fined between $500 and $1,000 and/or imprisoned for up to one year. *See* N.Y. Veh. & Traf. Law § 1193(b). Plaintiff is similar to Officer No. 24 in that both were charged and convicted. Furthermore, the range of penalties to which Officer No. 24 was subject is equivalent to that for a class A misdemeanant. *Compare id. with* N.Y. Penal Law §§ 70.15, 80.05. However, Endangering the Welfare of a Child and Driving While Intoxicated reflect differing degrees of departure from the requirements of practical reasonableness. This is seen in the fact that Endangering the Welfare of a Child is crime that involves intentional conduct toward a specific individual who is a minor and who generally is in a position of trust or care with respect to the offender. Therefore, the crimes are of sufficiently different severity that Officer No. 24 and

Plaintiff are not similarly situated.[2]

Plaintiff has failed to come forward with any evidence that Defendant has disciplined similarly-situated, non-African American police officers less severely than it did him. Nonetheless, Plaintiff argues that, although Defendant actively sought to prosecute him, it does not actively seek to prosecute non-African American police officers. The North Syracuse Police Department, however, investigated the events concerning Officer No. 29; the State Police Bureau of Criminal Investigation investigated those concerning Officer JR; and the Town of Geddes Police Department investigated those concerning Officer No. 24. *See* Dkt. No. 94 at Pt. 15 at 2, Pt. 16 at 18, Pt. 6 at 5. Plaintiff has not explained how, if at all, Defendant influenced those prosecutions. Furthermore, although Officer No. 28's allegedly criminal conduct did occur within the City of Syracuse, the nature of the allegations indicates that a prosecution of him would have been difficult. Therefore, Plaintiff has not shown that Defendant selectively prosecuted him on the basis of race.

Since Plaintiff has failed to identify a similarly-situated police officer whom Defendant treated differently, the Court finds that he has not established a *prima facie* Title VII disparate treatment claim and grants Defendant's motion for summary judgment with respect to that claim.

---

[2] Plaintiff has also made reference to persons whom he identifies as Officers Nos. 12, 6, 19, 14, and 13. *See* Amended Affidavit of Curtis Brown, sworn to March 28, 2005 ("Plaintiff's Aff."), at ¶¶ 19, 21, 22, 23, 24. He claims that he has reviewed these officers' IA files but that his current attorney does not have them. *See id.* It appears that Plaintiff's previous counsel might have the files for Officers Nos. 12, 6, 14, and 13. *See* Affidavit of A.J. Bosman, sworn to March 14, 2005, at ¶ 9. Plaintiff also refers to Officer RH. *See* Plaintiff's Aff. at ¶ 25. However, he has neither submitted Officer RH's file nor explained why he has not done so. Since it does not appear that Plaintiff has knowledge of the events concerning these officers independent of his reading of these files, the Court finds his statements about them to be hearsay and inadmissible.

### *3. Plaintiff's § 1981 claim*

As the Court previously noted

> Under Section 1981,[ ] Plaintiff is required to plead and prove disparate treatment to establish a *prima facie* case of racial bias. To prove that he was punished more severely than similarly situated Caucasian employees for violating work rules, Plaintiff must demonstrate that "(1) he did not violate the work rule, or (2) he engaged in misconduct similar to someone outside the protected group who was disciplined less severely."

*See* Dkt. No. 19 at 7 (citation and internal footnote omitted). Since the Court has already determined that Plaintiff has not identified any similarly-situated officers whom Defendant treated differently, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's § 1981 claim.

### *4. Plaintiff's Human Rights Law claim*

Since the Court has granted Defendant's motion for summary judgment with respect to Plaintiff's claims over which the Court has original jurisdiction, it declines to exercise its supplemental jurisdiction over Plaintiff's Human Rights Law claim pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Court grants without prejudice Defendant's motion for summary judgment with respect to Plaintiff's Human Rights Law claim.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's cross-motion for additional time for discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's Title VII and § 1981 claims; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED WITHOUT PREJUDICE** with respect to Plaintiff's Human Rights Law claim pursuant to 28 U.S.C. § 1367(c)(3); and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: June 8, 2005
Syracuse, New York

Frederick J. Scullin, Jr.
Chief United States District Court Judge