UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CURTIS BROWN,

                        Plaintiff,

      -v-                                    5:01-CV-1523

CITY OF SYRACUSE and
JOHN FALGE, Individually;

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

A.J. BOSMAN, ESQ.
NORMAN P. DEEP, ESQ.
Attorneys for Plaintiff
6599 Martin Street
Rome, NY 13440

CITY OF SYRACUSE LAW DEPARTMENT     JOSEPH FRANCIS BERGH, ESQ.
Attorneys for Defendants
233 East Washington Street
Room 301 City Hall
Syracuse, NY 13202

HANCOCK & ESTABROOK, LLP              JOHN G. POWERS, ESQ.
Attorneys for Defendants
1500 AXA Tower I
100 Madison Street
Syracuse, NY 13202

OFFICE OF THE ONONDAGA COUNTY      JOHN W. SHARON, ESQ.
   ATTORNEY
Attorneys of Non-parties Fitzpatrick, Trunfio,
   and Office of the District Attorney
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

This race discrimination case is scheduled to be tried before a jury on September 8, 2009. Plaintiff and defendants have filed numerous pre-trial motions. Oral argument was heard on September 1, 2009. Decision was reserved.

**II. BACKGROUND**

Plaintiff Curtis Brown was appointed as a police officer in the City of Syracuse Police Department on September 6, 1996. He executed the oath of office for this position pursuant to the New York Public Officers Law on the same day. On April 28, 2000, defendant John Falge, Chief of Police, suspended plaintiff with pay based upon evidence he had obtained that, contrary to his denial the previous day, plaintiff had rented a hotel room for a fifteen-year-old female runaway. On May 4, 2000, plaintiff was charged by misdemeanor informations with one count of endangering the welfare of a child and one count of obstructing governmental administration, violations of New York Penal Law sections 260.10 and 195.10, respectively. The Police Department also filed disciplinary charges against him.

On June 20, 2000, plaintiff pled guilty to endangering the welfare of a child in violation of New York Penal Law section 260.10. His guilty plea was in full satisfaction of all of the criminal charges against him. Upon plaintiff's plea of guilty, he was suspended without pay from the Police Department.

**III. DISCUSSION**

The various pretrial motion of the parties will be addressed in turn.

## A. Defendants' Motion in Limine (Doc. No. 180)

Defendants seek to preclude testimony or other evidence of police officers who were not similarly situated to plaintiff, "me too" testimony of other City employees, that the crime for which plaintiff pled guilty is anything other than an oath of office offense that disqualifies him from employment as a police officer as a matter of law, and from seeking anything other than nominal damages. As it relates to the expert report of the economic expert Matthew C. McCabe, M.B.A., the motion will be addressed with defendants' motion to strike the expert's report.

The first question that must be addressed is whether the crime to which plaintiff pled guilty was in violation of his oath of office. The answer to this question is an unequivocal yes.

When a public officer is convicted of a crime, an element of which is "knowing or intentional conduct indicative of a lack of moral integrity," he violates his oath of office. Feola v. Carroll, 10 N.Y.3d 569, 572-73 (N.Y. Ct. App. 2008) (citing Duffy v. Ward, 81 N.Y. 2d 127, 134-35 (1993)). When a public officer is convicted of a crime that violates his oath of office, his position is automatically vacated. Id. at 574; Lemieux v. City of Niagara Falls, 138 A.D.2d 945, 945-46 (N.Y. App. Div. 4th Dep't 1988); Pesale v. Beekman, 81 A.D.2d 590, 590 (N.Y. App. Div. 2d Dep't 1981); Hodgson v. McGuire, 75 A.D.2d 763, 763 (N.Y. App. Div. 1st Dep't 1980). As New York's highest court stated, "Public Officers Law § 30(1)(e) is a self-executing statute which provides that an office is deemed vacant upon an officer's 'conviction of . . . a crime involving a violation of his oath of office.'" Feola, 10 N.Y.3d at 572 (quoting N.Y. Pub. Off. Law § 30(1)(e)). "A facial review of the elements of the crime of endangering the welfare of a child under Penal Law § 260.10(1) indicates clearly that it is a 'crime

involving a violation of [an officer's] oath of office.'" Id. at 573.  Further, because the officer's position is terminated by operation of law upon such a conviction, no due process hearing is required.  Id. at 574; Lemieux, 138 A.D.2d at 946; Pesale, 81 A.D.2d at 591; Hodgson, 75 A.D. 2d at 763; see Greene v. McGuire, 683 F.2d 32, 35 (2d Cir. 1982) (finding that after felony conviction, under § 30(1)(e) any property interest in officer's employment was lost so due process was not implicated by failure to rehire after conviction reversed).

Plaintiff argues that it would be unfair to retroactively apply Feola in his case.  However, the Feola Court makes clear that the law remained the same since Duffy, and that the appellate court had "misconstrued our holding in Duffy when it concluded that a due process hearing was necessary to establish" if the crime of "conviction amounted to an oath of office violation."  Feola, 10 N.Y.3d at 574.

> Under Duffy, there are two alternative findings that may be reached.  If the officer is convicted of a misdemeanor the elements of which constitute willful deceit, calculated disregard for honest dealings, intentional dishonesty or corruption of purpose, then an oath of office violation has occurred and the position becomes vacant.  If, on the other hand, the misdemeanor for which the officer has been convicted is not of such a nature, then the officer is entitled to a hearing on the issue of appropriate discipline, which may include termination.  Here, Feola's conviction of endangering the welfare of a child constitutes the former, not the latter.

Id.  Thus, what is being applied here is the law as it has been at least since 1993 when Duffy was decided.  It is noted that the Second Circuit in this case relied upon the Feola lower court decision of the Appellate Division Second Department which held that conviction of endangering the welfare of a minor is not one that affects the officer's "oath of office" but

rather entitles the officer to a due process hearing.[1] Brown v. City of Syracuse, 197 Fed. Appx. 22, 25 (2d Cir. 2006) (summary order).  This ruling is no longer good law due to the Court of Appeals decision in Feola.  See Feola, 10 N.Y.3d at 573 (finding violation of Penal Law § 260.10(1) is a violation of an officer's oath of office).  Judge Graffeo, in dissent, disagreed "with the majority that in all instances a conviction under Penal Law § 260.10 implicates a public trust."  Id. at 576.  She would have required a due process disciplinary hearing which, of course, the majority said was not required.  Id. at 574, 576.  It is necessary to apply the law as just stated to the facts of this case.

>Plaintiff pled guilty to endangering the welfare of a child in violation of Penal Law § 260.10(1) on June 20, 2000.  As of that day his position as a public officer was vacated.  Feola, 10 N.Y. 3d. at 574.  Although under Duffy, decided in 1993, he was not entitled to a hearing on the issue of appropriate discipline, the City accorded him one.  See id.  Therefore, because his position as a police officer was vacated by operation of law on June 20, 2000, see id. (citing the self-executing statute Public Officers Law § 30(1)(e)), the City's subsequent suspension of him without pay and termination cannot be construed as an adverse employment action because by operation of law he was already terminated.  In

---

[1] It also is notable that the Appellate Division case was decided on January 24, 2006, six years after plaintiff pled guilty to endangering the welfare of a child in violation of N.Y. Penal Law § 260.10(1). See Feola v. Carroll, 25 A.D. 3d 697, 697 (N.Y. App. Div. 2d Dep't 2006), rev'd, 10 N.Y.3d 569.  Further, the trial court had previously ruled that the petitioner was not entitled to a due process hearing based upon his conviction of endangering the welfare of a child. Id. at 698.

Further, prior to plaintiff's guilty plea to endangering the welfare of a child, several other Appellate Division cases had been decided finding that conviction of a crime that violates the officer's oath of office automatically terminates the officer's position, due to convictions for seemlingly less serious crimes.  See, e.g., Limieux, 138 A.D.2d at 945 (two misdemeanor perjury counts); Pesale, 81 A.D.2d at 590-91 (one misdemeanor count of receiving an unlawful gratuity); Hodgson, 75 A.D.2d at 763 (one misdemeanor count of official misconduct).

effect, on June 20, 2000, by pleading guilty to endangering the welfare of a minor in violation of New York Penal Law § 260.10(1), the plaintiff terminated himself as a police officer with the City of Syracuse Police Department. His own act caused him to lose his job. Because his suspension without pay and termination were not adverse employment actions, any occurrences after June 20, 2000, are irrelevant and plaintiff is precluded from adducing at trial any evidence pertaining to after June 20, 2000.

The only remaining activity that could be considered an adverse employment action was his suspension with pay on April 28, 2000, immediately after the incident with the minor, and any subsequent acts by the defendants up to June 20, 2000. Therefore, plaintiff will be permitted to introduce at trial only evidence up to the time his position was vacated upon his plea of guilty to endangering the welfare of a child on June 20, 2000. Additionally, if he has evidence of any damages for that time period he will be permitted to introduce it. However, he is not entitled to any lost earnings because he was paid his salary up until the date--June 20, 2000--his position was automatically vacated by his own action.

With regard to similarly situated police officers and so-called "me too" City employees, the motion is denied without prejudice to make appropriate objections at trial. However, it is noted that "similarly situated officers" only includes those that prior to June 20, 2000, of whose potential criminal conduct--misdemeanor or felony--the Police Department was aware, and the Police Department declined to notify the appropriate prosecutorial agency (such as the Onondaga County District Attorney's Office).

### B. Plaintiff's Motion in Limine (Doc. No. 182)

There are three issues on plaintiff's motion in limine. Plaintiff first seeks the grant of judgment on liability against defendants for alleged violations of discovery orders.

Discovery has been contentious throughout this lengthy litigation, with both sides demonstrating antagonism rather than simple adversarial positions. No sanctions will be imposed.

Next plaintiff seeks to preclude defendants from arguing that he was terminated from his position on account of a violation of his oath of office. This issue is moot in light of the ruling on defendants' motion in limine.

Finally, with regard to any evidence regarding similarly situated persons, the motion is denied without prejudice to object at the appropriate time during the trial.

### C. County District Attorney's Motion to Quash (Doc. No. 192)

Plaintiff has subpoenaed non-parties William Fitzpatrick, Onondaga County District Attorney and Dominic Trunfio, First Chief Deputy District Attorney of Onondaga County, as well as a subpoena duces tecum for prosecution records of certain individuals. Fitzpatrick, Trunfio, and the Office of the District Attorney have moved to quash these subpoenas.

It is noted that Chief Assistant District Attorney Alison Fineberg was also subpoenaed but the motion to quash does not include her, and the subpoena stands as against her. She is expected to testify as to the background leading up to plaintiff's plea of guilty to endangering the welfare of a child in June 2000.

A subpoena that requires disclosure of privileged or otherwise protected matter where there is no applicable exception or waiver must be quashed or modified. Fed. R. Civ. P. 45(c)(3)(A)(iii). Further, if a subpoena "subjects a person to undue burden" it must be quashed or modified. Id. 45(c)(3)(A)(iv). It also is permissible to quash or modify a subpoena if, among other things, it requires disclosure of confidential information. Id.

45(c)(3)(B)(I). In making a determination on a motion to quash brought by a nonparty, where production would be "oppressive and unreasonably burdensome, the court, in balancing the hardships, should consider whether there are other sources for obtaining the material" as well as probative value if the material is disclosed. In re American Tobacco Co., 880 F.2d 1520, 1524 (2d Cir. 1989) (quashing a subpoena that "would place an unreasonable burden upon the [agencies] involved and would unduly disrupt the ongoing research" there).

The District Attorney argues that neither Trunfio nor Fitzpatrick have relevant testimony to offer and that appearing pursuant to them would unreasonably create an undue or oppressive burden on them, disrupting the operation of the District Attorney's office, which they oversee, and invite additional similar disruptions in the future. They contend that any testimony they could offer about the administration of the District Attorney's office would not be relevant to the issues in this case.

Trunfio and Fitzpatrick administer the Office of the District Attorney of Onondaga County. It is a large office, and requiring the two people at the head of that office to be absent from the office to attend trial would be burdensome and may cause disruption in the office.

Trunfio was Fineberg's supervisor at the time ADA Fineberg investigated the criminal charges against plaintiff. As the investigating ADA's supervisor, Trunfio also may have relevant testimony as to the events and the investigation which culminated in plaintiff's guilty plea. To the extent that such testimony would not be cumulative of ADA Fineberg's testimony, it does have probative value. In balancing this probative value against the burden of requiring Trunfio to appear for what should be relatively short testimony, the probative value weighs heavier. Accordingly, the motion to quash pertaining to Trunfio is denied. It is

noted that this ruling does not preclude objections at trial on grounds such as, irrelevancy and as cumulative.

However, there is no indication that Fitzpatrick has any additional information relating to the issues in this case.  There has been no proffer of what probative testimony he may provide.  Accordingly, the burden on the District Attorney's office outweighs the little if any probative value of his testimony.  The motion to quash as to D.A. Fitzpatrick is granted.

With regard to the subpoena duces tecum, the District Attorney has produced the subpoenaed documents for in camera review.  Therefore, the motion to quash is moot and is denied on that ground.  It is again noted that this does not preclude any objection to admission of these documents at trial.

### D.  Defendants' Motion to Quash Subpoenas (Doc. No. 194)

In April 2009, in anticipation of the previously-scheduled trial, plaintiff served subpoenas duces tecum on Thomas Galvin of the City of Syracuse Police Department.  The first commanded production of all original Internal Affairs Division (hereinafter referenced as IAD) logs from 1989 through the present.  The second commanded production of all IAD files of Vanessa Hasty.

In October 2006 the Magistrate Judge ordered defendants to produce IAD records regarding alleged conduct of police officers that could be regarded as criminal in nature and that had occurred between November 2002 and the date of production.  In compliance with the order, defendants produced the records covering conduct between November 2002 and October 16, 2006.  Plaintiff made no complaint about the adequacy of the discovery produced until the subpoenas were issued in April 2009.  Moreover, other than a conclusory statement that the IAD files of Vanessa Hasty are relevant, plaintiff provides no

reason why discovery regarding this person could not have been sought prior to the close of discovery. In sum, plaintiff now, on the eve of trial, seeks what is essentially additional discovery. Discovery in this case closed on September 30, 2004, and an Order denying plaintiff's motion for additional time for discovery was filed on June 8, 2005. Plaintiff will not now be permitted to reopen discovery. Accordingly, defendants' motion to quash the subpoenas duces tecum served upon Thomas Galvin is granted.

### E. Defendants' Motion to Strike (Doc. No. 204)

Defendants move to strike plaintiff's additional in limine motions filed along with his response to defendants' motion in limine. The deadline for filing in limine motions was April 17, 2009. Plaintiff's additional motions were filed on April 27, 2009. Thus, such motions, along with the supporting submissions, were untimely. Accordingly, the motion to strike is granted and the submissions will be disregarded.

### F. Defendants' Motion to Strike Expert McCabe's Report (Doc. No. 221)

In anticipation of the trial as previously scheduled, on April 21, 2009, defendants filed a motion in limine to preclude the testimony of plaintiff's expert economist Matthew C. McCabe, M.B.A. because no Expert Report was timely filed. On February 3, 2003, plaintiff served an Expert Disclosure naming McCabe as an expert witness. In light of the ruling that plaintiff is not entitled to any damages for loss of earnings, an expert witness on lost earnings is irrelevant. However, it is worth noting that even if his testimony were relevant, it would be precluded for the following reasons.

The most recent Pretrial Scheduling Order, filed on March 1, 2004, required service of any expert's written report on or before May 30, 2004. (It is noted that plaintiff's

present counsel appeared in this case on February 11, 2004, and participated in a status conference with the Magistrate Judge, before that Order was entered.)

Plaintiff filed amended pretrial submissions on April 7, 2009, yet no expert report by McCabe was filed. Then, on the same day that defendants moved to strike McCabe as an expert witness, some <u>six</u> years after naming McCabe as an expert and <u>five</u> years after expert reports were to be served, plaintiff finally served McCabe's expert report. The report was dated April 20, 2009.

On July 29, 2009, plaintiff served a revised expert report by McCabe dated July 20, 2009. According to plaintiff, the new report was necessary because the April 10, 2009, report failed to include projected overtime earnings. As a result of defendants' objections to this amended report, plaintiff made McCabe available for deposition. Defendants deposed McCabe on August 12, 2009. He produced at that deposition a report he had prepared for plaintiff dated May 2, 2003. Additionally, he disclosed that he had destroyed his file for this case earlier in the year and recreated the file from information from plaintiff, in order to produce the latest reports. Following his deposition defendants filed, on August 21, 2009, a motion to strike McCabe's expert report and to preclude his testimony.

Thus, not only was the expert report not disclosed to defendants until years after it was required to be, the original basis for the report was destroyed, calling into question the reliability of the most recent reports. Plaintiff argues that permitting defendants to depose McCabe cured any prejudice resulting from the late service of his expert report. This argument fails to account for the fact that the extreme lateness of the expert report served in April 2009 and the radical change in the amended report of July 2009 have effectively prevented defendants from retaining their own expert to rebut McCabe's

testimony. Under these circumstances, the sanction of precluding McCabe from testifying is appropriate. <u>See</u> Fed. R. Civ. P. 16(f). Any lesser sanction would result in sufficient prejudice to defendants so as to call into question whether the trial against them was fair and just.

Defendants' motions to strike the expert reports of Matthew C. McCabe and in limine to preclude his testimony are granted.

### III. CONCLUSION

Accordingly, it is

ORDERED that

1. Defendants' motion in limine (Doc. No. 180 other than as to McCabe as dealt with in No. 6 below) is GRANTED IN PART and DENIED IN PART as follows:

   a. Plaintiff is precluded from introducing at trial evidence pertaining to events after June 20, 2000;

   b. Plaintiff is precluded from introducing at trial evidence in relation to any lost earnings;

   c. In all other regards the motion is DENIED without prejudice to make appropriate objections at trial;

2. Plaintiff's motion in limine (Doc. No. 182) is DENIED as follows:

   a. With regard to discovery sanctions and reasons for plaintiff's termination;

   b. With regard to evidence about similarly situated persons is DENIED without prejudice to make appropriate objections at trial;

3. The motion to quash brought by the Onondaga County District Attorney (Doc. No. 192) is GRANTED IN PART and DENIED IN PART as follows:

      a. As to Dominic Trunfio, the motion is DENIED;

      b. As to William J. Fitzpatrick, the motion is GRANTED and the subpoena is QUASHED; and

      c. As to the subpoena duces tecum the motion is DENIED as moot;

    4. Defendants' motion to quash the subpoenas duces tecum served upon Thomas Galvin (Doc. No. 194) is GRANTED;

    5. Defendants' motion to strike (Doc. No. 204) is GRANTED and plaintiff's additional motions in limine and supporting submissions (Doc. 197 to the extent it asserts additional motions in limine) will be disregarded;

    6. Defendants' motions to strike the expert reports of Matthew C. McCabe (Doc. No. 221) and in limine to preclude his testimony (Doc. No. 180 to the extent it relates to McCabe) are GRANTED;

    7. Plaintiff and defendants will be permitted to introduce evidence as to events up to plaintiff's plea of guilty on June 20, 2000; and

    8. All other motions are DENIED without prejudice to renew at trial.

    IT IS SO ORDERED.

                                                      United States District Judge

Dated: September 1, 2009
       Utica, New York.