UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CURTIS BROWN,

                          Plaintiff,

      -v-                                    5:01-CV-1523

CITY OF SYRACUSE and
JOHN FALGE, Individually;

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                               OF COUNSEL:

A.J. BOSMAN, ESQ.
NORMAN P. DEEP, ESQ.
Attorneys for Plaintiff
6599 Martin Street
Rome, NY 13440

CITY OF SYRACUSE LAW DEPARTMENT     JOSEPH FRANCIS BERGH, ESQ.
Attorneys for Defendants
233 East Washington Street
Room 301 City Hall
Syracuse, NY 13202

HANCOCK & ESTABROOK, LLP               JOHN G. POWERS, ESQ.
Attorneys for Defendants
1500 AXA Tower I
100 Madison Street
Syracuse, NY 13202

OFFICE OF THE ONONDAGA COUNTY      JOHN W. SHARON, ESQ.
   ATTORNEY
Attorneys of Non-parties Fitzpatrick, Trunfio,
   and Office of the District Attorney
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

On September 22, 2009, defendants filed a motion for summary judgment. Plaintiff opposed and defendants replied. Also on September 22, 2009, plaintiff Curtis Brown ("plaintiff" or "Brown") filed a motion seeking reconsideration of the Memorandum-Decision and Order filed on September 1, 2009. See Brown v. City of Syracuse, 648 F. Supp. 2d 461 (N.D.N.Y. 2009). Defendants opposed. The Onondaga County Attorney also opposed reconsideration of the Order quashing the subpoena addressed to District Attorney William J. Fitzpatrick. The plaintiff replied. Both motions were taken on submission without oral argument.[1]

**II. BACKGROUND**

Defendant John Falge ("Falge"), Chief of Police, suspended Brown with pay on April 28, 2000, based upon information that plaintiff was being investigated by the New York State Police for allegedly taking a fifteen-year-old female runaway to a hotel room he had rented. Additionally, Falge had information that plaintiff disobeyed a prior order to stay away from the girl, and that his denials that he knew the whereabouts of the girl were false. On May 4, 2000, plaintiff was formally charged by misdemeanor informations with one count of endangering the welfare of a child and one count of obstructing governmental administration

---

[1] The history of this case is protracted and voluminous. See, e.g., Brown v. City of Syracuse, 648 F. Supp. 2d 461 (N.D.N.Y. 2009); Brown v. City of Syracuse, 623 F. Supp. 2d 272 (N.D.N.Y. 2009); Brown v. City of Syracuse, No. 5:01-CV-1523, 2008 WL 5451020 (N.D.N.Y. Dec. 31, 2008); Brown v. City of Syracuse, 197 Fed. Appx. 22 (2d Cir. 2006) (summary order); Brown v. City of Syracuse, No. 5:01-CV-1523, 2005 WL 2033492 (N.D.N.Y. Aug. 17, 2005); Brown v. City of Syracuse, No. 5:01-CV-1523, 2005 WL 1388918 (N.D.N.Y. June 8, 2005). The defendants and their counsel failed on many occasions to bring timely motions and relevant cases to the attention of the Court. Absent such neglect, this case might have been resolved years ago.

in violation of New York Penal Law sections 260.10 and 195.10, respectively.  The Onondaga County District Attorney's office also initiated an investigation into the charges.

Pursuant to a plea agreement, on June 20, 2000, Brown pled guilty to endangering the welfare of a child in violation of New York Penal Law section 260.10. in full satisfaction of all of the criminal charges against him.  As agreed, he was sentenced to a conditional discharge with an order of protection.  Upon plaintiff's plea of guilty, he was suspended without pay from the Police Department.

## III. DISCUSSION

### A. Summary Judgment Motion

### 1. Adverse Employment Action

Defendants correctly assert that all remaining claims[2] turn on whether Falge discriminated against Brown based upon his race.  Their motion for summary judgment is based upon plaintiff's inability to establish a prima facie case of race discrimination because Falge took no adverse employment action against him.

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).

Suspension with pay pending an investigation into criminal charges is not "a materially adverse change in terms and conditions of employment."  Joseph v. Leavitt, 465

---

[2] The remaining claims were brought pursuant to Title VII, New York Human Rights Law, and 42 U.S.C. §§ 1981, 1983 (equal protection and municipal liability) alleging race discrimination.

F.3d 87, 91 (2d Cir. 2006).  Falge had information that Brown failed to follow a direct order to no longer have contact with a fifteen-year-old girl.  He suspended plaintiff with pay pending investigation into, inter alia, the serious criminal charge of endangering the welfare of a minor.  Falge followed the Police Department's Rules and Regulations permitting suspension when an employee does not comply with a direct order of a supervisor and when there is "substantial evidence" that the employee acted in "such a flagrant nature as to render" his presence in the "department a source of embarrassment."  Thus, plaintiff's suspension with pay did not constitute a materially adverse change in the terms and conditions of his employment and he cannot establish the adverse employment action element of a race discrimination cause of action.

       Brown contends that Falge did not act reasonably in suspending him because white officers in purportedly similar situations (of being subject to a criminal investigation) were not always suspended, thus distinguishing him from the plaintiff in Joseph.[3]  To the contrary, as in Joseph, plaintiff's terms and conditions of employment "did not include a right to expect that he would be allowed to continue his responsibilities while he was facing serious criminal charges."  Id.  As a police officer plaintiff held a position of public trust.  He could not reasonably expect to continue in such a position while he was investigated for endangering the welfare of a child, that is, renting a hotel room and bringing a fifteen-year-old-girl there, conduct antithetical to the public trust.

---

[3] Defendants point to the eight comparator white police officers who plaintiff identified as being similarly situated to him but treated differently.  All eight were administratively suspended, belying plaintiff's claim of different treatment with regard to suspension.

Brown also claims that Falge suspending him with pay on April 28, 2000, constituted adverse employment action because, although he retained his pay and benefits, he was precluded from working and being paid overtime hours, as well as being stigmatized. According to plaintiff's "recollection," he usually worked about sixteen to twenty hours per week in overtime, and therefore would have worked approximately 180 overtime hours during his 53-day suspension. (Brown Aff. ¶ 3, Doc. No. 241.) However, time records from the Police Department for the previous year, 1999, show that plaintiff's overtime varied considerably, including many pay periods in which he worked no overtime. (Kolis Decl. Ex. A, Doc. No. 250-2.) Further, plaintiff admitted that he did not work overtime when he was on vacation or had other commitments. (Brown Aff. ¶ 2.) The record demonstrates that overtime was an extra, not a guaranteed term of employment. Moreover, any stigma he suffered was a result of his own admitted conduct--bringing a fifteen-year-old runaway girl to a hotel room he rented and then denying knowledge of her whereabouts--rather than being placed on a paid suspension with full benefits while his endangering the welfare of a child was investigated fully. Thus, loss of overtime and stigmatization in this case are insufficient to constitute adverse employment action.

### 2. **Equal Protection**

Brown also contends that the Police Department failed to support and assist him in getting the charges against him reduced to a non-criminal violation or adjournment in contemplation of dismissal, as they allegedly commonly did with white officers being investigated. He argues that this is a violation of equal protection in addition to employment discrimination. Contrary to plaintiff's assertion, failure to intervene in a criminal investigation

cannot be considered an adverse employment action or a violation of equal protection.[4] Months before, plaintiff was given a direct order from a supervisor to stop seeing a then-fourteen-year-old girl he was involved with, after a complaint was made by the girl's mother. After the girl (who had turned fifteen) had an argument with her mother on April 27, 2000, plaintiff rented a hotel room, picked the girl up after school, and took her to the room. The girl admitted to "making out" with him in the room. Brown left the room to work his night shift. Later that evening when called on the room phone by her mother, the girl hung up and left the room. The next morning, plaintiff picked her up at the mall and drove her to school. When he was questioned whether he knew the runaway's whereabouts, he denied having seen her or knowing where she was.

As in Joseph, plaintiff had no legitimate expectation that, given the information the Police Department had, he would be given "the benefit of the doubt or, even more importantly proceed with the assumption that appellant was innocent until proven guilty."

---

[4] The essence of Brown's equal protection claim is that the Police Department did not protect him from prosecution for endangering the welfare of a child, when it would have done so for a white officer. There is no evidence that the Police Department protected from prosecution a white officer accused of endangering the welfare of a child. Even if there were such evidence, the old adage "two wrongs don't make a right" would be apropos.

More importantly, plaintiff is suggesting that the Police Department protect him from prosecution for criminal conduct that he admitted in his guilty plea, or be subject to a claim for damages for failure to do so. While the Police Department may, in some instances, improperly work to lessen the impact of allegedly criminal conduct by its officers, it is ludicrous to suggest that failure to step in to stop a prosecution on criminal charges violates the Constitution. This is particularly true where, such as here, the officer pleads guilty to the criminal conduct.

Plaintiff also argues that the equal protection violation survives the automatic loss of his position upon his guilty plea, thus permitting him to recover damages on this claim after his suspension without pay/termination. It would be abhorrent to Constitutional principles to hold defendants liable in damages for lost earnings when those earnings were lost due to a conviction, upon his own plea of guilty, for endangering the welfare of a child.

It must not be forgotten in the midst of theoretical legal arguments that a police officer pled guilty to endangering the welfare of a child.

Joseph, 465 F.3d at 91.  The State Police, having been called by the runaway's mother, initiated an investigation.  The Onondaga County District Attorney also investigated and determined that there was sufficient evidence to prosecute.  Given these facts, rather than expecting the Police Department to intervene on his behalf, the only reasonable expectation plaintiff could have had would be that he would be subject to the disciplinary procedures of the department.  See id.; cf. Diesel v. Town of Lewisboro, 232 F.3d 92, 95 (holding that "a selective enforcement claim . . . cannot rest on the allegation that police officers refused to close their eyes to another officer's serious misconduct" and retaliation claim fails when the "alleged retaliation was a reasonable response to Diesel's own culpable conduct").  In sum, plaintiff's complaint that he was "deprived of a privileged status" cannot be said to have been a material adverse change in the terms and conditions of his employment.  See Diesel, 232 F.3d at 104 (finding that an equal protection claim fails where it is alleged that plaintiff "was deprived of a privileged status to which he had no constitutional entitlement").

### 3. Conclusion

Brown cannot establish an essential element of a prima facie case of discrimination--adverse employment action, and there is no basis for an equal protection claim.  Defendants are entitled to summary judgment dismissing all claims including the one for municipal liability based upon underlying race discrimination.

### B. Reconsideration Motion

Given the disposition of defendants' summary judgment motion, Brown's motion for reconsideration is moot.  However, plaintiff's argument regarding his claim for lost wages after his termination merits a brief discussion.  Again, plaintiff argues that he should be permitted to claim damages for the loss of his job because, although his position was

vacated as a matter of law, see Brown, 648 F. Supp. 2d at 464-65, he is entitled to damages for an equal protection violation.  The basis for this claim is that the Police Department helped white officers facing criminal investigations by giving them an opportunity to resign, face a department sanction in lieu of prosecution, and offered adjournment in contemplation of dismissal or reduced charges.  As with this argument relating to his suspension, plaintiff, whose own admitted misconduct led to his suspension, prosecution, and guilty plea, cannot rely on alleged deprivation "of a privileged status to which he had no constitutional entitlement" to support a claim for damages.[5]  See Diesel, 232 F.3d at 104.  Plaintiff continued a relationship with an underage girl after a direct order from his captain to stop.  He rented a motel room and took the fifteen year-old there when she ran away from her parents' home.  He spent time in the room with the girl.  The next morning, he picked her up and took her to school.  He then lied to his supervisors and told them he knew nothing of her whereabouts.  He pled guilty to the criminal charge of endangering the welfare of a minor.  During his plea, he allocuted to the foregoing facts.  His guilty plea rendered his position as

---

[5] Plaintiff's reliance on Leather v. Ten Eyck, 2 Fed. Appx. 145 (2d Cir. 2001) (summary order), is misplaced.  In Leather, the plaintiff was a civilian who was targeted for prosecution because of speech.  Id. at 148.  It was found by the jury that plaintiff would not have been investigated and caught but for the misconduct of the defendants.  Id. at 148-49.

In contrast, Brown was investigated because of a complaint made by the mother of a 15-year-old runaway girl whom the mother suspected was with Brown.  Brown was with the girl; in fact, he had rented a hotel room and taken the girl there.  The investigation was conducted by the New York State Police, not by Brown's employer the City of Syracuse Police Department.  Additionally, the criminal prosecution was conducted by the Onondaga County District Attorney's Office, not the Syracuse Police Department.  Unlike the plaintiff in Leather, the investigation and prosecution of Brown was independent of the defendants.  Moreover, the record evidence establishes that Brown, unlike Leather, would have been caught regardless of any conduct of defendants.  Thus, Leather is inapposite here.

In addition, rulings such as Leather made by summary order have no precedential effect.  2d Cir. R. 32.1.1.  However, the court's reasoning distinguishing Diesel is instructive, again pointing out that Leather was not complaining of the withholding of preferential treatment, as was Diesel.  Id. 149-50.

police officer vacated as a matter of law.  Brown is not entitled to damages suffered because he conducted himself in such a manner that subjected him to criminal prosecution and the loss of his job.

### C. County Request for Costs

In its opposition to plaintiff's motion for reconsideration, the County, as a non-party, requests that costs be awarded for resources expended addressing the matter of the quashed subpoena.  Plaintiff did not address this request, although he did file a reply.  However, costs will not be granted.

## III. CONCLUSION

Accordingly, it is

ORDERED that

1.  Defendants' motion for summary judgment is GRANTED;

2.  The complaint is DISMISSED in its entirety; and

2.  Plaintiff's motion for reconsideration is DENIED as moot.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated:  January 11, 2010
        Utica, New York.